United States District Court
Southern District of Texas
**ENTERED**
October 14, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOSE MAURICIO SANTANA, § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | CIVIL ACTION NO. 2:20-CV-00298 |
| § | |
| COX, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Jose Mauricio Santana is in the custody of the federal Bureau of Prisons and is currently incarcerated at the Federal Correctional Institution in Three Rivers, Texas. Proceeding *pro se*, Santana filed an original *habeas corpus* petition pursuant to 28 U.S.C. § 2241 on December 4, 2020. (D.E. 1). Liberally construed, Santana claims that officials violated his due process rights under the Fifth Amendment during disciplinary proceedings and that insufficient evidence supported his disciplinary conviction because he was not fighting another inmate, but rather attempting to break up a fight. Respondent filed a motion to dismiss, construed as a motion for summary judgment because it requires consideration of evidence outside the pleadings, to which Santana has responded. (D.E. 18, 21); Fed. R. Civ. P. 12(d). As discussed more fully below, it is respectfully recommended that Respondent's motion (D.E. 18) be GRANTED and Santana's § 2241 petition be DENIED.

## I. BACKGROUND

### a. Disciplinary and Grievance Records

Santana is serving a 20-year sentence, imposed on November 1, 2017, after being convicted of conspiracy to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. (D.E. 17 at 10). Santana does not complain about his conviction, however, but instead challenges the results of a disciplinary hearing.

On November 5, 2019, Santana was charged in an incident report with fighting another person on October 31, 2019. (*Id.* at 13). The incident report indicated that, on November 5, the staff reviewed the circumstances of the October 31 incident and concluded that Santana was involved in a fight with two other inmates. The report indicated that all three inmates admitted to hitting the others with closed fists, with Santana saying that he "was trying to break it up but when he hit me I started to hit him." Security camera footage showed Hispanic inmates fighting. All three inmates had bruises or abrasions on their face. (*Id.*). Santana also stated that he "was sucker punched and blacked out so [he didn't] know if [he] hit anyone or not." (*Id.* at 14). One of the other inmates identified Santana as one of the people to struck him with a closed fist. (*Id.*).

In a statement prepared during the investigation, Lieutenant A. Bartlett stated that he was informed of an inmate altercation that was not witnessed by staff. (*Id.* at 25). Four inmates were found with injuries consistent with being involved in a physical altercation, including Santana. During his interview, Santana stated that "there was a fight in the unit. I was breaking up the fight and was hit. I started fighting to defend myself." (*Id.*). Santana

2

stated that one of the other inmates hit him in the face, so he started fighting that inmate. (*Id.* at 26). The other inmate also indicated that he fought Santana. (*Id.*). A security camera showed several Hispanic inmates involved in a physical altercation. (*Id.* at 27).

Santana was advised of his rights during the disciplinary process, which included: (1) the right to have a written copy of the charge against him at least 24 hours before the hearing; (2) the right to have a staff representative; (3) the right to call witnesses and present evidence; (4) the right to present a statement or remain silent; (5) the right to be present throughout the hearing; (6) the right to be advised of the hearing officer's decision and the facts supporting it; and (7) the right to appeal the decision through the administrative remedy procedure. (*Id.* at 16). On the same day, he was given notice of the upcoming disciplinary hearing. (*Id.* at 18). Santana indicated that he did not want to have a staff representative or present witnesses. (*Id.*).

The original Discipline Hearing Officer Report ("DHO Report"), dated February 5, 2020, indicated the following. (D.E. 1-6 at 1-3). Santana was charged with fighting another person and the disciplinary hearing was held on November 18, 2019. (*Id.* at 1). Santana waived his right to a staff representative, but the report also stated that "Staff Representative stated he had time to speak to inmate Stanley, and the inmate was ready to proceed with hearing." Santana admitted to the charge and stated: "It wasn't supposed to get like this. It got out of hand. I was trying to separate them." Santana waived his right to present witnesses. (*Id.*). In addition to the incident report and investigation, the hearing officer considered evidence from a health services clinical encounter, photographs, and staff memorandums. (*Id.* at 1-2). The officer found that Santana committed the act as

3

charged. (*Id.*). However, at the end of the explanation, the officer stated that Santana "committed the prohibited act of Telephone for Abuses Other Than Criminal in violation of Code 297." (*Id.* at 2). As a result, Santana lost 27 days of good time credit, received 5 days of disciplinary segregation, and lost 90 days of phone, commissary, email, and visitation privileges. (*Id.*).

Santana pursued an administrative appeal before filing his § 2241 petition, but he was unsuccessful. (*See* D.E. 1-2, 1-3). In support of his administrative appeal, Santana submitted a letter from one of the other inmates indicating that Santana was trying to break up the fight. (D.E. 1-3 at 5-6).

In an amended DHO Report dated March 11, 2021, the erroneous references to "inmate Stanley" and a charge of "Telephone for Abuses Other Than Criminal in violation of Code 297" were removed. (D.E. 17 at 5-7). However, the amended DHO Report also added to the narrative explanation, including stating that the "DHO took into consideration that staff observed you and another inmate [ ] striking each other with closed fists" and that the decision was "[b]ased on staff members eyewitness account of the incident," among other evidence. (*Id.* at 6).

b. **Petition and Claims**

In his petition, liberally construed, Santana first contends that his due process rights were violated during the disciplinary hearing process. (*See* D.E. 1 at 8). Second, he asserts that insufficient evidence supported the disciplinary conviction because the evidence showed that he was breaking up a fight between two other inmates. (D.E. 1-4 at 2-3). Santana notes that the DHO Report included several mistakes, including referring to him

4

by the wrong name and citing the wrong offense of conviction. (*Id.* at 1-2). He also contends that the statements supposedly given by the other inmates were fabricated. (*Id.* at 3).

## II. DISCUSSION

### a. Failure to Sign Petition

In the motion to dismiss, Respondent first argues that Santana's petition should be dismissed because he failed to sign it as required under 28 U.S.C. § 2242. (D.E. 18 at 7).

Santana did not respond to this argument.

An "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Such a petition may be returned to the applicant or, if the petitioner continues to refuse to sign the petition, dismissed for want of prosecution, but the failure to sign a petition is not in itself grounds for a dismissal with prejudice. *Cox v. McBride*, 279 F.3d 492, 493 (7th Cir. 2002). However, the Court may also disregard the defect if it sees fit. *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990).

Here, Santana failed to sign his petition. (*See* D.E. 1 at 9). However, because Respondent has addressed the merits of the petition and has not raised any argument that this defect will cause problems in resolving this case, it is recommended that Santana's failure to sign his petition be disregarded. *See Hendricks*, 908 F.2d at 491.

### b. Due Process

On the merits, Respondent argues that the procedural due process requirements were followed in Santana's disciplinary proceedings. (D.E. 18 at 7-9). Respondent argues that

5

Santana: (1) received adequate notice of the charges against him; (2) was given the opportunity to have a staff representative; and (3) was given the opportunity to make a statement, call witnesses, and present documentary evidence. (*Id.* at 9-11). Respondent notes that the DHO Report was amended in March 2021 to correct "typographical errors." (*Id.* at 2 n.1).

Santana responds that the changes made in the amended DHO report were inaccurate and inconsistent with previous staff statements. (D.E. 21 at 2-4). He also argues that he did not know that the report was amended when the staff made him sign it. (*Id.* at 4).

The Supreme Court has recognized that prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Wolff v. McDonnell*, 418 U.S. 539, 561 (1974). Prison disciplinary hearings are not part of a criminal prosecution, and accordingly, "the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. However, the minimum amount of procedural due process required for prison inmates includes: (1) at least 24 hours' advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when doing so is not unduly dangerous to institutional safety or correctional goals; and (3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Id.* at 563-67; *Walpole v. Hill*, 472 U.S. 445, 454-55 (1985).

Here, Santana cannot make out a due process cause of action because he was afforded all the procedural due process rights required in a prison disciplinary hearing. Santana has not identified any specific right that was violated during the disciplinary proceedings. However, first, the evidence indicates that he was given notice of the impending hearing on November 7, 2019, and the hearing was not held until November 18, which was over 24 hours later. (D.E. 17 at 5, 18). Second, he was informed of his right to call witnesses and present evidence, but waived this right. (*Id.* at 16). Third, he received a written statement from the factfinder of the evidence relied on and the reason for the disciplinary action. (D.E. 1-6 at 1-3; D.E. 17 at 5-7). These are the three requirements to ensure procedural due process rights in a prison disciplinary hearing. *Hill*, 472 U.S. at 454-55.

Santana is correct that the original DHO Report included several mistakes, including erroneously referring to him as "inmate Stanley" in one instance and also erroneously stating that he was found guilty of "Telephone for Abuses Other Than Criminal in violation of Code 297" in another instance. (D.E. 1-4 at 1-2). However, the rest of the report was accurate to the charge, the inmates involved, and the supporting evidence. The amended DHO Report corrected these mistakes, but Santana is again correct that it added new mistakes by stating that hearing officer relied on eyewitness accounts by staff members. (D.E. 17 at 6). All of the documentary evidence from the time of the charged offense was clear that no staff members saw the fight occur. (*Id.* at 13, 25). While these mistakes reflect badly on the Bureau of Prisons and should not be made, they do not represent a procedural due process violation because Santana nonetheless received the required written

7

statement by the factfinder of the evidence relied on and the reason for the disciplinary action, which Santana has been able to use as the basis for his appeal both administratively and to this Court.

      c.    **Sufficiency of the Evidence**

Respondent next argues that the evidentiary requirements for a disciplinary hearing were also followed because, under the applicable standard, "some evidence" supported Santana's disciplinary conviction for fighting. (D.E. 18 at 11-13).

Santana does not respond to this issue specifically, but argues that the amended DHO report relies on false and inconsistent evidence. (D.E. 21 at 2-4).

Disciplinary findings are not disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). In practice, this means that the court's only role on review is to determine whether the guilty finding is supported by "any evidence." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). Credibility determinations are left to the discretion of the hearing officer. *Id.* Evidence need not logically preclude any conclusion but the one reached by the disciplinary officer. *Hill*, 472 U.S. at 457.

Here, there was sufficient evidence in the record for the hearing officer to find Santana guilty of fighting another person. The evidence showed that Santana admitted being present at the fight and hitting another inmate in the face, had facial injuries, and that another inmate indicated that Santana hit him in the face. (D.E. 17 at 5, 13-14, 26-27). This meets the low "any evidence" standard applicable in disciplinary hearings. *Hudson*, 242 F.3d at 537. To the extent that Santana argues that he was trying to break up the fight,

8

the evidence need not logically preclude any conclusion but the one reached by the disciplinary officer. *Hill*, 472 U.S. at 457. Finally, as previously noted, both the original and amended DHO Reports included erroneous statements. However, Santana has not disputed the accounts of Lieutenant Bartlett or the investigation report, which both provide enough evidence that he fought another inmate to surpass the "any evidence" standard. Both versions of the DHO Report indicated that the finding was based on this evidence as well. (D.E. 1-4 at 2; D.E. 17 at 6). Under the circumstances, there was sufficient evidence in the record to find Santana guilty of fighting another person.

## III. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's construed motion for summary judgment (D.E. 18) be GRANTED and Santana's § 2241 petition be DENIED.

Respectfully submitted on October 14, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).